Knights of Pythias *v.* Cogbill.

KNIGHTS OF PYTHIAS *v.* COGBILL.

(*Jackson.* April 28, 1897.)

1. LIFE INSURANCE. *Applicant's duty of disclosure.*

An applicant for life insurance, though warranting the truth of statements and answers made to the medical examiner, is not required to know and state in his application, with absolute certainty, his real physical condition and predisposition to different diseases, but it is sufficient if he in good faith discloses fully and truthfully all that he knows about his past and present health. (*Post, pp. 29–33.*)

Cases cited and approved: Rosenfeld *v.* Knights of Pythias, 92 Tenn., 508.

2. SAME. *Policy not avoided on account of medical examination by unauthorized physician.*

An insurance company cannot, after the death of an insured, repudiate the contract on the ground that it was based on the examination of a physician not authorized to make it, if the examination was honestly and fairly made and had been previously ratified by the company. (*Post, pp. 33, 34.*)

3. SAME. *Medical examiner is agent of company.*

A physician who acts as medical examiner for an insurance company which accepts or ratifies his examination, will be regarded as the agent of the company instead of the insured in making such examination, although the application recites that he shall be held to be the agent of the applicant. (*Post, pp. 34, 35.*)

4. SAME. *Omission of applicant to mention diseases does not avoid policy, when.*

The omission of an applicant for insurance, made without fraudulent purpose, to mention a disease, which does not directly or indirectly cause or contribute to his death, does not avoid the policy, especially when no direct or specific inquiry is made about the particular disease. In the absence of specific and direct inquiries, the applicant need not disclose every slight

Knights of Pythias *v.* Cogbill.

and temporary illness, but only those more serious attacks which have, in some degree, affected unfavorably his general health or constitution. (*Post, pp. 35–37.*)

Cases cited and approved: Rand *v.* Life Assurance Co., 97 Tenn., 291; Insurance Co. *v.* Lauderdale, 94 Tenn., 642; K. of P. *v.* Rosenfeld, 92 Tenn., 508; 13 Wall., 230; 112 U. S., 250.

5. SAME. *Same.*

An insurance policy is not rendered void by the failure of the insured to specifically state in his application that he had previously had a certain disease, where the after affects of such disease are stated, and the medical examiner knew that he had had such disease. (*Post, pp. 37, 38.*)

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County.   L. H. ESTES, J.

TURLEY & WRIGHT and MOORE & WELLS for Knights of Pythias.

JAMES M. GREER for Cogbill.

CALDWELL, J.   On September 19, 1893, the Endowment Rank, Knights of Pythias, issued to Edmond T. Cogbill, of LaGrange, Tenn., a benefit certificate for three thousand dollars, payable to his wife, Sallie J. Cogbill.   The assured died March 16, 1894, and his widow, as beneficiary, commenced this action in October, 1895, to collect the certificate.   In defense, it was pleaded that the insurance was procured

by false representations and fraudulent concealments on the part of the deceased in regard to his health. The plaintiff obtained verdict and judgment for three thousand four hundred and fifty dollars, principal and interest, and the defendant appealed in error.

In Cogbill's application, which was made September 4, 1893, appear the following questions and answers, viz.: "*Question.* Are you now in good health? *Ans.* Yes. *Ques.* Have you consulted a physician in the last five years? *Ans.* Yes. *Ques.* When, and for what diseases? *Ans.* In 1888 I had bilious fever. *Ques.* Give the name and residence of such physician. *Ans.* Dr. Webb, Colliersville, Tenn. *Ques.* Give the name and residence of your medical adviser. *Ans.* Dr. Jones, LaGrange, Tenn."

Subsequent questions enumerated numerous physical diseases, not including lagrippe, and of them the applicant replied, that he had been afflicted with "catarrhal sore throat" and "external piles" only. Finally, he was asked: "Have you had any illness or injury other than as stated by you" already? And to that question, he answered "No." The same person (Dr. Jones) named by the applicant as his "medical adviser," propounded the questions as "medical examiner," and, on the same sheet of paper, made a detailed certificate, in which he said: "The applicant has a catarrhal condition of throat and nose, mild form," and that he has had no other "disease or disorder which affects his present health."

In the printed portion of the application it was

stipulated that the "statements and answers made to the medical examiner are warranted to be true," and that the medical examiner "shall be held to be the agent of the applicant as to all answers and statements" made by the latter. The application and the medical examiner's certificate went into the hands of the medical examiner in chief, and he, relying upon the information therein contained, recommended that Cogbill be accepted as a member of Section No. 1876, which was done, and the benefit certificate issued.

After her husband's decease, Mrs. Cogbill, the beneficiary, made out a certificate of death and claim of insurance, in which occur the questions and answers following: " *Ques.* Place and date of death? *Ans.* Eddy, Texas, March 16, 1894. *Ques.* Cause of death? *Ans.* Laryngitis. *Ques.* When did health of deceased first begin to be affected? *Ans.* January, 1893, after an attack of lagrippe. *Ques.* Duration of last illness? *Ans.* He was not able to attend to his business after January 1, 1894—ten weeks. *Ques.* Had the deceased any previous disease, and, if so, when and what was the nature and duration of same? *Ans.* Nothing more than catarrhal trouble."

Lagrippe was not mentioned by question or answer in the application or the medical examiner's certificate, but was spoken of first in the widow's proof of death. At the trial it was shown, conclusively, that the applicant did have the disease for a short time in January, 1893, though not in

such form as to require medical attention, and that it was followed by sore throat, for which Dr. Jones made three prescriptions, two in February and one in March, 1893.

Cogbill's failure to disclose these facts in his application, and his statement therein that he had suffered no "illness or injury" other than "bilious fever," "catarrhal sore throat," and "external piles," were pleaded as a bar to the action, the contention being that such failure was a fraudulent concealment, and such statement a false representation of matters material to the risk.

Though asked to name all diseases with which he had been afflicted in the last five years, and to give the name and residence of physicians consulted about them, the applicant did not say he had catarrhal sore throat, or that he had consulted a physician about it. These omissions, it was suggested in behalf of the widow, were justified by the fact that the medical examiner, Dr. Jones, who propounded the questions to the applicant, already had the information, being himself the physician consulted. The same suggestion was made in regard to the applicant's failure to state that he had lagrippe in 1893; and, as to the latter, it was suggested, additionally, that such failure could not be fatal, since lagrippe was not mentioned in any of the numerous questions asked.

In reply, it was contended, on the other side, that the general questions propounded to the appli-

cant called for a disclosure of all diseases, lagrippe among the rest, with which he had been afflicted, and that the knowledge of the medical ` examiner could in no event be imputed to the Endowment Rank, because he was the agent of the applicant alone as to all statements and answers made · in the application.

The trial Judge rightly instructed the jury to the effect that Cogbill was not bound, at the peril of the beneficiary, to know, and to state in his application, with absolute certainty his real physical condition and predisposition to one disease or another (*Rosenfeld* v. *Knights of Pythias*, 92 Tenn., 508); but was required, in the utmost good faith, to disclose fully and truthfully all that he knew about his health, past and present. In the same connection, the Court further said, in substance, that it was incumbent on the Endowment Rank to honestly and fairly advise each applicant, by plain questions, what information he was expected to impart, and to carry out, in the utmost good faith, any contract honestly and fairly made with him; and that it could not, after his death, repudiate the contract upon the ground that it was based on the examination of a physician not authorized to make it, if, in fact, the examination was honestly and fairly made, and had been previously ratified. Undoubtedly, the instruction, as it appears in the record, was greatly lacking in precision, and is subject to adverse criticism for that reason, yet it is believed

that the foregoing sentence correctly expresses the meaning intended to be conveyed to the jury; and, so interpreted, the instruction was pertinent and sound.

Referring again to the examination of the applicant, and the agency of Dr. Jones in making it, the Court further said to the jury: "If you find, from the evidence, that Dr. J. W. Jones was the medical examiner who examined E. T. Cogbill, who was at the time the medical adviser of said Cogbill, and had been for more than a year previous to his application for membership in the Endowment Rank of Knights of Pythias, and you find that his work, as medical examiner for them, was accepted or ratified by them, then he was their representative." Stripped of obvious surplusage, this instruction announces the single and axiomatic proposition that Dr. Jones was to be regarded as the agent of the Endowment Rank in examining Cogbill, if, in doing that, he acted as medical examiner for the Endowment Rank, and it accepted or ratified his examination. The soundness and applicability of this proposition is not impaired, in this case, by the recitation in the application that the medical examiner "shall be held to be the agent of the applicant as to all answers and statements" made by him; for that recitation, if so intended, could not abrogate and reverse a well-established rule of law. If A, without authority, assume to act as agent for B, and B accepts or ratifies the unauthorized act, he becomes

bound thereby, and, for all legitimate purposes of the transaction, A is to be treated as B's lawful agent. Jones examined Cogbill as medical examiner of the section, and so signed his certificate of examination, and upon that certificate, in connection with Cogbill's application, the medical examiner in chief indorsed his recommendation of acceptance, after which the benefit certificate was issued without other examination.

There was some testimony in favor of the proposition that Cogbill's death was attributable to his attack of lagrippe in January, 1893, and the sore throat which followed; and there was some, and perhaps a preponderance, to the contrary, and in favor of the insistence that his death was caused by exposure and a cold contracted in December, 1893, nearly a year subsequent to the attack. In regard to the attack of lagrippe, the consequence of not mentioning it in the application, the effect of the medical examiner's knowledge of it, and the disclosure as to catarrhal sore throat, the jury received this charge: "If you find, from the evidence, that the applicant, E. T. Cogbill, had a case of lagrippe in the January of 1893, which resulted in catarrhal sore throat, and ,finally in his death, [his omission to mention] this would be such a failure to disclose his physical condition and history as would make the contract void and defeat a right of recovery. On the other hand, if the medical examiner was E. T. Cogbill's medical adviser, and so noted in the application for admission into the Endowment

Rank, and knew of his condition then and for the year preceding his admission into the order, and the applicant, Cogbill, disclosed his physical condition by saying and having noted in his application that he was suffering from catarrhal sore throat, and you find that was the after consequence of lagrippe or cold, then the failure to tell that he had lagrippe would not defeat his widow's right of recovery, and your verdict should be for plaintiff." The criticism against the first sentence of this portion of the charge is, that it erroneously made the applicant's failure to disclose the fact that he had suffered from lagrippe of no consequence, unless that disease finally resulted in his death, when, as contended, the omission to make the disclosure was a fraudulent concealment that should have avoided the insurance in any event.

The Court was right. The mere omission of an applicant to mention a disease which does not, directly or indirectly, cause his death, can but be an immaterial matter in an action for the insurance. Such an omission does not affect the risk, and cannot be properly characterized as a fraudulent concealment. It is not every slight or temporary illness, and especially when not specifically inquired about, that must be revealed. Only those attacks which have, in some degree, a detrimental influence upon the general health or constitution of the applicant are material to the risk, and, therefore, within the rule as to warranties. *Rand* v. *Life Assurance So-*

*ciety,* 97 Tenn., 291; *Insurance Co.* v. *Lauderdale,* 94 Tenn., 642; *K. of P.* v. *Rosenfeld,* 92 Tenn., 508; *Insurance Co.* v. *Wilkinson,* ·13 Wall., 230, 231; *Conn. Mut. Life Ins. Co.* v. *Union Trust Co.,* 112 U. S., 250; 1 Bacon on Life Ins., Sec. 234.

It is urged against the last sentence quoted from the charge, that it erroneously imputes the knowledge of the medical examiner to the Endowment Rank itself. The objection narrows the proposition laid down by the Court, and drops two qualifying elements out of view. Briefly re-stated, the proposition is this: (1) If the medical examiner knew of the applicant's condition for the last year, (2) and the applicant had the fact that he was suffering with catarrhal sore throat noted in the application, and (3) that sore throat was the after consequence of lagrippe, "then the failure to tell that he had had lagrippe would not defeat the widow's right of recovery." The case is not made to turn upon the medical examiner's independent and uncommunicated knowledge, but, in addition thereto, the widow was required to show that the fact of the applicant's catarrhal sore throat was disclosed in the application, and that such condition "was the after consequence of lagrippe." Considered as a whole, the proposition is not subject to the objection made.

After all, the effect of a case of sickness is the important matter. Its influence upon the system of the patient, if known, is more to be considered by the insurer than the mere fact of the attack itself.

Knights of Pythias *v.* Cogbill.

In this case the Court virtually said that if the effect of the disease, "the after consequences," was revealed, the failure to have the disease itself particularly noted would not vitiate the insurance, especially when the fact omitted was known to the medical examiner.

There is no error in the charge given, nor in the refusal to give other instructions requested, nor in ruling upon evidence; hence, the judgment is affirmed.