BENNETT *v.* MASS. MUTUAL LIFE INS. CO.

*(Jackson.* June 15, 1901.)

1. EVIDENCE. *Parol admissible.*

In an action to rescind a written contract on the ground that it did not, by reason of fraud, express the real. intention and meaning of the parties, it is competent to show by parol the true and real contract made by the parties. (*Post, pp. 373, 374.*)

Cases cited: McKenzie *v.* Planters' Ins. Co., 9 Heis., 261; Barnard *v.* Roane Iron Works, 85 Tenn., 139.

2. SAME. *Sufficiency of.*

In an action to rescind a written contract on the ground that, by reason of fraud, it did not express the intention of the parties, a decree in favor of complainant will be sustained upon the testimony of himself alone, proving the real contract different from that expressed in the writings, especially where he shows the presence of agents of the other party at the making of the contract, who are not offered to contradict him. (*Post, pp. 373–375.*)

Cases cited: Chapman *v.* McAdams, 1 Lea, 500; Gage *v.* Railway Co., 88 Tenn., 726; McBee *v.* Bowman, 89 Tenn., 133; Stone *v.* Manning, 103 Tenn., 232; Jackson *v.* Blanton, 2 Bax., 63; Dunlap *v.* Haynes, 4 Heis., 476.

3. LIFE INSURANCE. *Insurer precluded by the fraud of its medical examiner.*

An insurance company cannot avoid its policy for incorrect answers touching the assured's physical condition, and personal and family history written into the medical examination upon which the policy is based, by the insurer's medical examiner, without the knowledge or consent of the assured, who had, in fact, answered all questions correctly. (*Post, pp. 375–376.*)

4. SAME. *Authority of medical examiner defined.*

While the medical examiner of an insurance company is an agent with limited powers, nevertheless his acts in and about the

Bennett *v.* Mass. Mutual Life Ins. Co.

business intrusted to his care are binding within the scope of his authority, and to this extent the general rules of agency are applicable to him as to other special agents. *Post, pp. 376– 377.)*

Case cited: K. of P. *v.* Cogbill, 99 Tenn., 34.

5. SAME. *Rescission of policy.*

Although the insurer may be estopped to rely upon incorrect answers inserted in the application by the medical examiner without assured's knowledge or authority to avoid its policy, this fact does not estop the assured, upon the discovery of such defect, to sue for rescission of policy and recovery of premiums paid thereon. *(Post, pp. 377, 378.)*

6. SAME. *Same.*

And such suit is not barred by the defendant's failure to read his policy, or the application for it, in which the defect was disclosed, for over two years after its issuance. *(Post, pp. 378– 380.)*

7. SAME. *Same.*

Nor is such suit defeated by the assured's delay to bring it for two months after discovery of the defect in his policy. *(Post, pp. 378–380.)*

---

FROM GIBSON.

---

Appeal from Chancery Court of Gibson County. JOHN S. COOPER, Ch.

DEASON & RANKIN for Bennett.

C. D. BERRY and SPL. HILL for Mass. Mutual Life Ins. Co.

WILKES, J. This is a bill to recover back premiums which were paid by complainants upon a life

insurance policy in the defendant company. These premiums are sought to be recovered upon the ground that, while the assured made true answers to all questions asked him by the medical examiner of the company touching his physical condition and family and personal history, they were not by the examiner written down as directed by the assured, but false and incorrect answers were written down by the examiner, without the knowledge or assent of the assured; and that complainant, the assured, did ·not know that such false answers had been written down until after two payments of premiums had; been made, ·and the third was about due.

The company denied that any such false answers had been written down, but insisted that if mistaken in this, still it would have been estopped by the act of the examiner from relying thereon and would have been bound by the policy, even though the answers were falsely written; that the policy would have been incontestable with the next payment, in any event, so that the complainants had all the while been insured under the policy, and were not injured or likely to be from the incorrect answers.

Proof was taken and the Chancellor held that complainants were entitled to the relief sought, and defendant has appealed and assigned errors.

It is said that the evidence does not justify the decree for the reason that the answers in the written application, signed by the assured, could not. be

contradicted and overturned by the evidence of the assured alone.

We treat this assignment as raising both the question of competency and sufficiency of the assured's testimony. It was objected to in the Court below as incompetent, and the objection was overruled by the Chancellor. If the suit in this case was upon the contract, and in affirmance of the same, the testimony might be properly rejected upon the theory that it seeks to vary the terms of a written contract. But the action in this case is to rescind the contract because it was fraudulently written, and did not state the answers as they were given, nor express the real contract and intention of the parties. In such case parol proof is competent to establish the fraud and admissible to show that the contract as written is not the contract as made by the parties. Bacon on Benefit Societies, Sec. 153; *McKenzie* v. *Planters Ins. Co.*, 9 Heis., 261; *Barnard* v. *Roane Iron Works*, 85 Tenn., 139.

As to the sufficiency of the proof, it appears that the facts material to be shown are deposed to by only a single witness, the assured himself, and his testimony is directly in conflict with the statements made in the application. As to the latter feature, under the aspect in which the matter is presented, it is not an objection to the testimony that it contradicts the written application. Indeed, this is the gist of the whole controversy, to wit, that the answers made in the application are not true, and

are not as made by the assured, but were fraudulently made by the examiner. The principle invoked might apply with great force if the answers had been made by the assured and he afterwards, upon his examination, sought to contradict them.

We know of no rule requiring any number of witnesses to prove a fact such as is set out in this case. It is true the burden is upon the party seeking to impeach the writing, but a preponderance of evidence is all that is required in this, as well as other civil actions. *Chapman* v. *McAdams*, 1 Lea, 500; *Gage* v. *Railway Co.*, 88 Tenn., 726; *McBee* v. *Bowman*, 89 Tenn., 133; *Stone* v. *Manning*, 103 Tenn., 232; Gibson's Suits in Chancery, Sec. 446.

It appears that there is no testimony whatever to contradict that of complainants. The soliciting agent of the company, as well as the medical examiner, were present when the answers were given, and neither one was examined, and this raises a presumption that they would not have contradicted the statement of the complainant. The case is, in effect, a charge of fraud as against them, and this amounted to a challenge to them to testify. *Jackson* v. *Blanton*, 2 Bax., 63; *Dunlap* v. *Haynes*, 4 Heis., 476. In the absence of any testimony from them contradicting the statement of the assured, we think the Chancellor was warranted in finding the facts as stated by the complainants.

It is said that the Chancellor erroneously held

the policy void because of the fraud of the medical examiner. It is contended by the complainants, and was held by the Chancellor, that the medical examiner was a special agent, and that he exceeded his authority in writing down answers contrary to direction, and, hence, the company. was not bound thereby; so that, as a matter of law and fact, the complainants had no protection, and the payment of the premiums was without consideration. On the other hand, the company insists that it could not have successfully defended against the policy, because of the fraudulent conduct of its own medical examiner, so that complainant could have enforced the contract, and the policy, in the event of death, would have been collectable.

We are of opinion that the company, in the event of a loss, could not have defended against the policy, if all the facts could have been developed, as shown in this record. It is true the medical examiner of the company is not a general agent of the company, in the broad sense of the term, but one whose duties are confined to a single feature or department of the business, but in that department he is a general agent. The doctrine is thus stated by Mr. Joyce in his work on insurance, Vol. 1, Sec. 412: ''A medical examiner is an agent with limited powers, but, nevertheless, his acts in and about the business entrusted to his care are binding within the scope of his authority, and, to this extent, the general rules of agency are applicable to

him as to other special agents.'' See, also, the case
of *Knights of Pythias* v. *Cogbill*, 99 Tenn., 34; 2
Enc. of Law, 328; *Gratton* v. *Metropolitan Life Ins.
Co.*, 80 N. Y., 281 (S. C., 36 Am. Rep., 617).
We think the company would have been bound,
under the facts of this case as they are now de-
veloped, in the event of death before the contract
was repudiated by the complainant, and he was,
until then, insured. The company, under the facts
stated in this record, could not have defended upon
the ground that the answers were not true, if it,
at the same time, appeared that the examiner had
written down unauthorized and untrue answers. *Pud-
iyky* v. *Imp. Lodge*, 76 Mich., 428 (S. C., 43 N.
W. Rep., 373); *Ass. Soc.* v. *Renthinger*, 25 S. W.
Rep., 835; *Insurance Co.* v. *Boodis*, 52 Ark., 11;
*Flynn* v. *Insurance Co.*, 78 N. Y., 568; *Gratton*
v. *Insurance Co.*, 80 N. Y., 281; *Iusurance Co.* v.
*Momudy*, 89 Pa. St., 363; *N. Y. Life Ins. Co.* v.
*Russell*, 23 C. C. A. Rep., 54; *Mass. Life Ins.
Co.* v. *Eshelman*, 30 Ohio St., 647; *Union Mutual
Life Ins. Co.* v. *Wilkenson*, 13 Wall., 222; *New
Jersey Mutual Life Ins. Co.* v. *Baker*, 94 U. S.,
610; *Clemmons* v. *Imp. Soc.*, 16 L. R. A., 1 to 36.

But, while it is true that, upon the facts being
fully developed, the company could not have de-
fended against this policy, it is evident the assured
was put to a great disadvantage, and possibly it
would have been impracticable to develop the facts
after the death of the assured. We will suppose

the company to have been sued upon the policy after the death of the assured. It is apparent from the record in this case that it could have been readily shown that false statements were made in the application, and this, without more, would have avoided the policy. In order, then, to recover upon it, complainants must have shown the fraud and virtually reformed the application. But this could only be done by the assured himself, and, he being dead, the application could not have been reformed, and the company would have escaped liability. We are of opinion, therefore, that complainant was not efficiently protected by this policy, and, upon discovering the fraud, he was warranted in repudiating the contract and treating it as though it had never been made.

It is next insisted that complainant has been guilty of such laches as must estop him from now insisting upon any relief. Complainant testifies that he had great confidence in the medical examiner, and did not read over the answers after they were written, and he did not know of the fraud practiced upon him until just before the third payment fell due; that he then immediately wrote to the company, calling attention to it, and also called the attention of Dr. Hunt, the medical examiner, to the matter, and inquired of him how it occured, and, when put in possession of the facts, brought suit within two months thereafter.

We think that the suit was brought with sufficient

promptness after the facts were discovered, and the principal difficulty is in the fact that the complainant did not examine the written answers at the time they were made and not within two years or more thereafter, although a copy of them was in his possession during that time. Reposing confidence in the examiner, and assuming that he wrote the answers correctly, the complainant neither read the medical examination when it was made, nor until two years or more thereafter, when he became aware of the fraud and thereupon sought to avoid it. While it was an act of negligence in complainant not to have examined the writing, it was negligence superinduced by the confidence which he reposed in the medical examiner, and this enabled the company to practice the fraud upon the assured.

We think that, whatever might be the rights of third persons growing out of this matter, it does not lie in the mouth of the company, upon the one hand, to confess its fraud, and on the other, to say that you are estopped to rely upon that fraud because you have not more promptly discovered it. As a matter of common observation, even good business men do not examine the various conditions and statements in their policies as they should, but we think that when the fraud is virtually confessed, and from the very nature of the case must have been premeditated and designed, it would be going too far to hold that because the assured was lulled and misled by his confidence in the agent of the

insurance company that the company can take advantage of this to make its own fraud effective.

In this connection it is proper to state that it appears that complainant was debating the propriety of taking the cash value of his policy and surrendering it when he discovered the fraud, and the fraud was discovered in consequence of the examination he was making in order to determine this question. It is also proper to state that, with the next payment of premium, the policy of complainant would have become incontestable for this fraud of the medical examiner, so that complainant, if he had desired, could have continued his policy in full force by making the payment. The record, as we think, discloses the fact that he did not desire to continue the policy, as the premiums were burdensome, and he seized upon the fraud of the examiner as a reason for putting an end to the contract and recovering the premiums he had paid, instead of taking the alternative of cashing the policy for its value.

While this is the situation, and no doubt this was the motive that prompted the assured, still it would not authorize this Court to impose upon him a contract which he has not made and which, by the fraud of the company's agent, was based upon false premises, and he had the right to repudiate it, and recover back the money paid upon it.

We are of opinion the Chancellor reached the correct result and equity of the case, and his decree is affirmed with costs.

Judges McAlister and Beard do not concur.