PeaiisoN, J.
 

 The intestate and the defendant had for' several years, dealt as partners in buying and selling land and other property ; and on the 20th day of December, 1844, made a final settlement and division. They then agreed to deal as partners in buying, raising, and selling cattle, sheep and hogs; which copartnei’ship continued until the death of the intestate in 1848, when the plaintiff
 
 administered
 
 and delivered to the defendant his share of such of the cattle, &c., as were in the possession of his intestate, and received of the defendant his intestate’s share of such of the cattle, &c., as were in the possession of the defendant. The intestate and the defendant had also after 1844, purchased and held, as partners, two parcels of land — -the-Roberts and the Kelyon tracts — and had, as partners, built a'house and made‘a large quantity of brick.
 

 The bill charges, that the intestate paid much more than his share of the price of the Roberts tract, and contributed more than his share of the labor and incidental expense
 
 in
 
 building the house and making the brick. The copartnership extended to horses and mules, as well as cattle, &c., ■ and the defendant had on hand a number óf mules belonging to the firm, which he refused to divide. It also extended to the family expenses of the partners, and the defendant refused to pay the one half of the debts, contracted by the intestate for the support of his family. And there are- ' many outstanding debts contracted for the firm, and for which the intestate had given his individual notes. The prayer is for an account.'
 

 
 *257
 
 The defendant alleges, that he bas paid his full share of the price of the land, and contributed his full share of labor and expense in building the house and making the brick, or nearly so, and, if he is at all in arrear, he is willing to pay whenever the amount is ascertained. He denies, that, after December, 1844, the copartnership extended to any thing, except buying, i aising, and selling cattle, sheep, and hogs, and except the purchase of the two tracts of land and the house and brick. And he denies, that there are, to his knowledge, any notes given by the intestate for cattle, sheep, or hogs, or for which the firm was otherwise bound, except three — one to the administrator of Wolf, of which a small part was for the purchase of cattle ; one to Alexander, and one to Wilson; and of these he has paid, or is willing to pay, his part; and, if there be any others, for which the firm is liable, he is willing to pay his part.
 

 Upon the coming in of the answer, the cause was referred by a rule of Court. The arbitrators made their award,, and filed it on the 5ih of March,, 1851, as follows;.
 

 “M.
 
 Palton,
 
 Adm’r of Israel Baird, dec'd.
 
 vs.
 
 Wm. R, Baird.
 

 This case having been referred to the undersigned for-settlement,, and we having examined complainant’s bill and defendant’s answer thereto, also heard the testimony introduced by the parties, and argument of counsel thereon, beg leave to report the following, as the result of our investigation, to wit — First: That Israel Baird and Wm-. R. Baird: were joint owners of two tracts of land, purchased since-. December 20th, 1844, to wit: the Pearce Roberts or Cas-suda, and the Lester or Kelyon tracts; and that the claim of the said defendant to. the half of the sale thereof is right,.
 

 “ Second : That they were jointly interested in the buying, raising, and selling of cattle, sheep, and hogs; but not in horses an,d mules.
 

 
 *258
 
 "Third: That the debt to the estate of W. Wolf for 'stock is joint, except $>47, that being the individual debt of the defendant, Wm. R. Baird ; also the debt to the estate of N. Alexander is joint; the debt clue to F. M. Wilson is made up of $37 or $38, due by I. Baird, and $7 or $8 by said W. R. Baird : all outstanding debts for cattle, if any such, are joint,
 

 “Fourth : The debt of $425 is chargeable to L Baird’s estate, and due to said W. R. Baird.
 

 “Fifth: We charge defendant with $125, it being a deficiency on his part in work and furbishing lumber towards making the 60,000 bricks and building house; which sum the said defendant is
 
 to
 
 pay to the plaintiff.
 

 “Any other charges in said bill, we consider a's
 
 settled,
 
 dnd need not be especially mentioned in this report.
 

 “ All of which is respectfully submitted,
 

 JAS. W. PATTON,
 

 W'.
 
 U. RANKIN,
 

 JAS. M. SMITH-.”
 

 '“March 5th, P85P.
 

 At April Term, 1851, the plaintiff moved to set aside the award, because it was uncertain in many particulars-, 'and because it was not final,
 

 The defendant insisted, that the award was valid ; but to pbviate all objections, moved the Court to allow the arbitrators, (who were then present,) to withdraw the award and amend it, so as to. make it certain and final. To this .’the plaintiff objected, The Court refused the njotión, and 'set aside the award.
 

 The objection, because of the omission -to decide as to 'the costs, cannot be sustained. In such cases, each party 'pays his own costs.
 

 All of the other objections, except two, are met by the rule, “
 
 id cerium esi, quod cerium reddipotest.’1
 
 The seem
 
 *259
 
 ing uncertainties can be removed by reference to the pleadings, and by simple calculation.
 

 ’This part — ' the debt to Wilson is made up 'of $37 or $38, dúe by J. Baird, and $7 Or $8, due by W. R. Baird”-^ is uncertain, and cannot be aided by the above rule. It is a small matter, and, probably-, might be obviated by the defendant’s submitting to 'take it most strongly against himself. We would consider of this, but for the fact, that the other objection fe fatal-.
 

 The award is not final in this : “ All outstanding debts for cattle,
 
 if any
 
 such, are joint.’’ Thus, upon its face, leaving the question, which of the outstanding debts are for cattle ? open for further litigation,
 

 The object of a submission is, to put an end to litigation in reference to all 'matters embraced in it. If this object is not completely answered, the consideration of the agreement fails, and either party may insist upon setting aside the award, and claim the right 'to stand in “
 
 statuo quo.1'’
 
 That an award must be final, is a settled rule, in reference to all submissions. Where it is a rule of Could-, besides the reason above stated, there is the further one, that, unless it be final, the Court cannot enforce it. In this State, judge-ments are entered upon such awards, and the parties are then out of Court;
 
 Simpson
 
 v McBee, 3 Dev. 531.
 

 No judgment óañ be rendered upon this award; and, consequently, the Court cannot enforce it. Suppose the plaintiff pays off a note of the intestate, and insists it was 'given for cattle. The defendant insists it Was given for family expenses! or mules. The parties being out of Court, this question can Pnly be settled by another suit.
 

 It is said, however, there is no evidence of the existence of any other debt for cattle, except the three set out in the award. The reply is, the award, upon its face, leaves this 'question open, and the plaintiff has had no opportunity, and has not been called on, to show, whether there be any other such debts, or- not. There are many outstanding debts
 
 *260
 
 against the intestate. The defendant can only, in a qualified manner, say, none of them, within his knowledge, are for cattle ; and he supposes the possibility of such a thing, by saying, if there be any such, he is willing to pay his part, whenever the fact is ascertained.
 

 How is it to be ascertained ? The arbitrators ought to have come to a conclusion upon the subject,
 
 and made it
 
 a part of the award. To do so, it was necessary to take an account of the debts of the firm, to call on the plaintiff to show what debts, if anj'-, were contracted for cattle, sheep, or hogs, and to decide definitely, how far the defendant was liable to contribute. This would have concluded th.e pasties, and put an end to all controversy.
 

 The confident belief o.f the defendant, that there are no such debts, increases the probability of renewed litigation, should the plaintiff come to a different conclusion in regard to any of the debts. It is, therefore, apparent, that the submission has not answered the purpose for which it was intended — the consideration moving to it has, (to some extent, at least,) failed; and the plaintiff, consequently, has a right to insist upon being allowed to pursue his remedy before the regular tribunal, in which his suit is instituted.
 

 The motion to allow the arbitrators to withdraw the award and amend it, was properly refused. After an award is made, the arbitrators are
 
 ‘‘füncli
 
 oficia,” and have no more power to alter it, than a jury has to change their verdict, alter it is rendered, and they are discharged.
 

 it may not be amiss to add : arbitrators are no more bopnd to, go into particulars, and assign reasons for their award, than a jury is for its verdict. The duty is best discharged by a simple announcement of the result of their investigations,.
 

 The arbitrators have announced no conclusion upon the tWQ questions, which, we have considered ; and the effect of the defendant’s motion is, to, refer the matter back, so, that they may decide upon questions which they had left
 
 *261
 
 undecided. This the Court had no power to order or allow, without the plaintiff’s consent.
 

 Although disposed to sustain awards, we feel obliged to concur with his Honor, There is no error.
 

 • This opinion will be certified; and the cause will proceed, as if there had been no reference.
 

 Per Curiam.- Ordered accordingly.