INSURANCE Co. v. HANCOCK.

(*Nashville.*   February  2,  1901.)

1. INSURANCE, FIRE.   *Waiver of limitation upon bringing action for loss.*

   By making an absolute denial of liability a fire insurance company waives the provision of its policy allowing it sixty days after proofs of loss are made in which to pay the loss without suit.   (*Post, pp. 515, 516.*)

   Case cited: Insurance Co. v. Thornton, 97 Tenn., 1.

2. SAME.   *Waiver of condition as to ownership of insured property.*

   A condition that avoids a fire policy if the assured's interest in the insured property is other than that represented in his application, is not available to defeat the insurer's liability in an action on the policy where the assured answered correctly as to his interest in the property, but the agent of the company wrote his answer incorrectly and obtained his signature to the application without his knowledge of the incorrectness of his answer; and the truth of the matter may be shown by parol evidence contradicting the written application.   (*Post, pp. 516–518.*)

   Case cited: Insurance Co. v. Sorrels, 1 Bax., 352.

3. SAME:   *Sufficient compliance with condition as to occupancy of insured property.*

   It is a sufficient compliance with the condition in a fire policy that the insured premises shall not become vacant, that a tenant of the owner lived with his family in a small house in the yard only thirty-six feet distant from the insured premises, and slept in one room of the insured premises, although he did not have access to the other rooms, especially where the assured informed the company's agent, at the time of effecting the insurance, that he expected to be absent with his family from the insured premises, leaving a person to sleep in the house, and this was assented to by the agent with an intima-

   22 P—33

Insurance Co. *v.* Hancock.

tion that it would suffice if some one lived in the yard. (*Post, pp. 518–522.*)

Case cited and distinguished, Insurance Co. *v.* Ridge, 9 Lea, 507.

---

### FROM RUTHERFORD.

---

Appeal in error from Circuit Court of Rutherford County. W. C. HOUSTON, J.

B. L. RIDLEY for Home Insurance Co.

RICHARDSON & RICHARDSON for Hancock.

McALISTER, J. This is an action on a policy of fire insurance. Verdict and judgment below were in favor of plaintiff for $1,908.75. The company appealed and has assigned errors.

It appears from the record that this policy was issued and delivered to the plaintiff on November 28, 1899, and insured a country dwelling house in Rutherford County, including the household furniture. On March 24, 1900, this property was destroyed by fire.

The conditions of the policy material to the present investigation are, first, that the insured is the sole and unconditional owner in fee of said property; second, that the premises shall be continually occupied, and if they shall become vacant, unoccupied, or uninhabited, then the policy

shall be null and void. The policy also provides that payment shall be made in sixty days after receipt of proofs of loss. It appears proofs of loss were duly made by the assured, which were received by the company on April 30, 1900, and the present suit was commenced on June 13, 1900, less than sixty days after receipt by the company of the proofs of loss.

The prematurity of the suit was pleaded in abatement, but the plea was overruled. The company then pleaded, first, that the title of the property was not a fee simple title in the assured at the time he applied for the insurance, nor at any subsequent time; second, that the premises were vacant, unoccupied, and uninhabited at the time of the fire without the knowledge and consent of the company. The trial resulted, as already stated, in a judgment in favor of the plaintiff.

The first assignment of error is that the Court erred in overruling defendant's plea in abatement as to prematurity of the suit.

We think a conclusive answer to this assignment of error is found in the fact that defendant company, on receipt of proofs of loss, wrote a letter to the insured in which it denied any liability for the loss, upon the ground that the possession, occupancy, and use of the property at the time of the fire was not as stated in the

policy or application. This was an unconditional denial of liability.

The law is that denial of liability is a waiver of the time limit clause in the policy, and hence plea of prematurity of suit cannot be successfully interposed. Says Mr. Biddle in his work on Insurance, Sec. 1145, viz.: "There is usually in the policy an agreement that the insurer shall not pay the loss till the expiration of a certain period, as sixty days, from the loss or receipt of proofs, which may be waived. When the insurer declines to pay at all, it has been held that the insured may sue from the date of refusal, as this waives the above clause." Citing Sec. 1141, note 9.

In *German Ins. Co.* v. *Gibson,* 14 S. W. Rep., 672, the Court said, in speaking of this clause: "It would be unreasonable to say that it (the company) still retained the right to have the ninety days in which to pay a loss that it never intended to pay. The object of the agreement that the company should have the ninety days was to give it time to pay after the loss was adjusted. Why should it have the time when it never intended to pay? The denial of liability was inconsistent with such a clause, and was a waiver of it.". See, also, *Insurance Co.* v. *Thornton,* 97 Tenn., 1.

The next assignment of error is that there is no evidence to support the verdict. This assign-

Insurance Co. *v.* Hancock.

ment is based upon the ground that the policy had become void and the insurance forfeited for two reasons, namely: First, because plaintiff made a false statement in his application for insurance, which statement became a part of the policy, and was warranted to be true, wherein he claimed to be the owner in fee simple of the premises, when as a matter of fact he was not such owner. Second, because the property was vacant, unoccupied, or uninhabited at the time the same was destroyed by fire.

We shall first consider the representation in respect of the title. On this subject we find evidence in the record tending to show that the answers to the questions propounded to the assured in the application were written down by the agent of the defendant company. In answer to the question, "What title has applicant to these premises?" the insured is made to answer, "Fee simple." The insured testified that he did not know the meaning of the words fee simple title, and made no such statement to the agent. He further testified that just as he was about to sign the application the agent asked applicant if the title to the property was in him. He replied, "No, sir; I had the deed made to me and my wife during our lifetime, and to what children she had by me." This deed, moreover, was registered, and the registration books were easily accessible. So that it appears from plaintiff's evi-

dence, which must be held to have been accepted by the jury, that the company was fully advised through its authorized agent, before the application was signed, of the true state of the title, and that the erroneous statement in the application that plaintiff was the owner in fee simple of the premises was the mistake of the agent, which cannot be visited upon the assured.

In *Insurance Co.* v. *Sorrels,* 1 Bax., 352, it was held by this Court that when the agent makes out the application for insurance and inserts in it representations that are untrue, though the facts were correctly stated to him by the assured, who signs the application, this will not prejudice the insured's rights or invalidate the policy, and parol testimony may be heard to show that the answers were thus written by the agent. Citing *Union Mutual Ins. Co.* v. *Wilkinson,* 13 Wallace, 322.

"Where the applicant states fully and truthfully the circumstances relating to the title and ownership of the property insured, and the agent, knowing all the facts, states the title incorrectly and issues the policy, the company cannot take advantage." Joyce, Secs. 472-476, and citations.

The other ground insisted upon for a forfeiture of the insurance is that the premises at the time of the fire were "vacant, unoccupied, and uninhabited," in violation of the conditions of the policy. An able and elaborate argument has been

submitted in support of this contention. The authorities uniformly uphold the importance and validity of the occupancy clause in insurance policies.

In *Insurance Co.* v. *Ridge,* 9 Lea, 507, the policy provided that if the within mentioned premises shall become vacant or unoccupied, without the consent of the company indorsed on the policy, the policy shall be void. It appeared that the fire occurred while the premises were temporarily vacant, and it was held this fact avoided the policy, and the insured could not recover. What, then, are the facts presented in this record for the application of this principle? The proof shows that the insured, when he applied for the insurance, told the agent that he and his family would not be in that house all the time, whereupon the agent asked him if there would be some one in the yard, and he (insured) told him there would be a man in the house, and the agent replied that would be all right. We think it obvious, from this statement, that the agent would have been satisfied to have an occupant of the tenant's room in the yard, and did not intend to demand that some one should actually reside in the house. However, the proof is that plaintiff and his family moved out of the house and went to Wilson County, where he cultivated a farm. He left a tenant, or cropper, in charge of the farm in Rutherford County,

but would return "sometimes twice a week, sometimes once a week, and sometimes he would miss a week." All of the furniture and household goods, excepting two or three articles, remained in the building.

The proof is that at the time of the insurance there were two small rooms in the yard, situated about thirty-six feet from the dwelling house. These rooms were occupied by a tenant and his family. About the twentieth of December, before the fire occurred, this tenant commenced to sleep in one of the rooms of the dwelling house. On the night the fire occurred, to wit, March 24, 1900, this tenant, his wife, and a visitor were sitting in the tenant's house. The fire occurred about twenty-five minutes to eleven o'clock, and when first discovered it was on top of the house at the east side. The proof shows that no one had been in the dwelling house for a week. The tenant had access to one room only, and no keys to any other part of the house.

The question then presented upon these facts is whether the insured dwelling house was unoccupied in such a sense as to avoid the policy. We think not. In the first place the agent who took the application was informed that insured expected to leave the premises. This agent inquired if there would be some one in the yard, thereby intimating that this would be sufficient. But the

insured stated there would be a man in the house. To this arrangement the agent assented, saying all right. Now the proof shows that from December 20 the tenant had been sleeping in one of the rooms of this dwelling, and that on the night of the fire he was sitting in the tenant's room, only thirty feet away. The object of having some one on the premises is to keep out trespassers, prevent incendiarism, as well as to maintain supervision over the property. The proof is clear that no one had entered these premises, nor is there a suggestion that the fire was of incendiary origin. It could have arisen from spontaneous combustion, or possibly the ignition of matches by rats or mice. But it is insisted that this tenant, having no keys or access to the other rooms, was powerless to reach the fire when discovered. No authority has been furnished where this exact point has been decided.

In *Moody* v. *Amazon Ins. Co.,* 52 Ohio St., 12, it was said, viz.: "Nor does it follow that as a matter of law a dwelling house is to be considered as unoccupied because it has ceased to be used as a family residence, when the household goods remain ready for use, and it continues to be occupied by one or more members of the family, who have access to the entire building for the purpose of caring for it, and who do care for it, and make some use of it as a place of abode."

So in *Imperial Ins. Co.* v. *Kierman,* 83 Ky., 470, the Court said, viz.: "When the tenant moved the appellee failing to obtain another tenant immediately, got a man to stay in one room of the house, which was furnished for the purpose, and who ate and slept there, having access to the entire building for the purpose of caring for and watching it, and who was so doing when it was destroyed."

It will be observed that while the exact point is not raised or decided, both cases lay stress upon the fact that the custodian of the house had access to the entire building. We can well see how this arrangement might promote the interest of both parties in the protection of the premises. Yet, as a practical matter, we are not prepared to hold that a man who has left an occupant of a single room to watch his house must leave with him the keys to his entire premises. This is frequently impractible and undesirable, and such a rule would result in much injustice to policy holders. In the present case all that was contemplated between the parties was that some one should sleep in this dwelling house and maintain a watch over the premises. There was a reasonable compliance on the part of the insured with this understanding, and the judgment must be affirmed.