CLARK MILLINERY COMPANY, Inc., v. NATIONAL UNION
FIRE INSURANCE COMPANY.

(Filed 3 October, 1912.)

1. **Insurance, Fire—Arbitration and Award—Policy Stipulations—Suit in Sixty Days—Denial of Liability—Effect.**

    The stipulations in a fire insurance policy that "the loss shall not be payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss herein required have been received by this company, including an award by appraisers when appraisal has been required," do not apply to the right of the insured to bring his action within that time when, after the award has been made, the insurance company through its adjuster has denied the company's liability, erroneously claiming that the award was too indefinite to admit of the insurer's liability thereunder.

2. **Same—Nonwaiver—Interpretation of Contracts.**

    The nonwaiver agreement in a policy of fire insurance which stipulates that the submission to arbitration and appraisement of the loss "shall not waive or invalidate any rights of either party to the agreement under the" policy, etc., does not affect the rights of the insured, after the company has refused to pay the amount of the award rendered, to bring his action within the sixty days.

3. **Corporations — Receivers — Parties — Insurance, Fire—Suits in Twelve Months.**

    The receiver of an insolvent corporation may sue in the name of the corporation or in his individual capacity as receiver, and when he has instituted an action against an insurance company, in the name of the corporation, for loss by fire within the twelve

months stipulated in the policy, and thereafter joins in the suit as receiver, he does not change the nature of the suit by becoming a party; and in any event this provision of the policy is fully met.

4. Arbitration and Award—Award, How Construed—Terms of Sub-mission—Interpretation.

When it can consistently and reasonably be done, the courts will construe everything in support of an award rendered strictly in pursuance and in uniformity with the submission, and which does not exceed its terms.

5. Same—Intent—Certainty—Presumptions.

An award must be certain and final as to all matters submitted, giving to the words employed their ordinary meaning, and it will be taken to be so unless the contrary appears on its face, every fair presumption being in favor of its validity, and it will be so construed as to put one consistent sense on all its terms, the certainty required being a certainty of a common intent.

6. Arbitration and Award — Award, How Construed — Intention—General Terms—Intent.

An ambiguity appearing in an award should be construed in the way which will best coincide with the apparent intention of the arbitrators; and the courts will thus restrain the general terms thereof to apply to particular words in the submission, so as to connect the particular thing awarded therewith.

7. Arbitration and Award—Conclusion.

An award of arbitrators must speak for itself; and it is not open to proof of any understanding or meaning of the arbitrators, different from the meaning to be gathered from its terms, and the duty of the arbitrators is best discharged by a simple announcement of their decision, or the result of their investigation, without giving any reason therefor.

8. Arbitration and Award—Matters Submitted—Parol Evidence.

Parol evidence is competent to show what matters submitted to the arbitrators were considered by them in making their award.

9. Arbitration and Award—Interpretation—Definiteness—Inaccuracies—Bookkeeping.

Ignorance of bookkeeping and ungrammatical expressions will not avoid an award otherwise regularly found; and in this action to recover damages caused by a fire covered by a policy of insurance, which had been submitted to arbitration under a

stipulation therein, the amount of the award, expressly stated, is upheld, though it appears that it was derived by subtracting a certain sum, placed in the wrong column of figures, from the total loss, without observing the mathematical forms in making the calculations.

10. Arbitration and Award—Statements in Award—Interpretation.
    The statement of the award under a fire insurance policy, passed upon in this case, that it was an "appraisal and determinor of values," is held to be a mere statement of the process by which the arbitrators came to their conclusion, and does not affect the award- expressly found.

11. Arbitration and Award — Total Loss — Damaged Goods—Judgments—Harmless Error—Appeal and Error.
    It appearing that the loss covered by a fire insurance policy is total, damaged goods awarded to the plaintiff were of no value, and a deduction of $257 made by the court from the amount awarded to the plaintiff, found by the arbitrators to whom the matter was submitted, is in defendant's favor, of which it cannot complain as error.

APPEAL by defendant from *Justice, J.,* at January Term, 1912, of WILSON.

This is an action brought in the Superior Court by the millinery company to recover on certain fire insurance policies issued to it by the defendants. The coplaintiff, F. S. Hassell, was appointed receiver of the millinery company, a corporation which had become insolvent, and made a party to the action, at his own request. The property destroyed by fire was a stock of merchandise, consisting chiefly of millinery and notions and store furniture and fixtures. The parties agreed to submit to arbitration the ascertainment of "the sound value of said property and the loss and damage," and a certain method was prescribed for doing so. The agreement of reference to arbitrators contained what is called a "nonwaiver clause," by which it was stipulated that the submission and appraisement "shall not waive or invalidate any rights of either party to the agreement under the said policy or policies, or any provisions or conditions thereof." The arbitrators met and appointed an umpire, as they were authorized to do by the terms of the submission, and the three returned the following award:

We, the undersigned, pursuant to the within appointment, do hereby certify that we have truly and conscientiously performed the duties assigned us in accordance with the foregoing stipulations, and have appraised and determined the actual cash value of said property on the.....day of........, 190..., and the actual loss and damage thereto by the fire which occurred on that day to be as follows:

|  | Sound Value. | Loss and Damage. |
|---|---|---|
| On ......................... | $6,039.53 | |
| On ......................... | 4,872.62 | $1,166.91 |
| On furniture and fixtures ..... | 460.80 | 178.08 |

Total amount of award $4,872.62 and the damaged stock.
Witness our hands, this 10th day of March, 1910.
Agree as to furniture and fixtures only.

J. I. THOMASON,

Q. E. RAWLS,

*Appraisers.*

J. T. WILLIAMS,

*Umpire.*

The jury returned the following verdict:

1. Has there been an appraisal and award, as provided in the policies, as to the amount of damages to which plaintiff is entitled under the policies of insurance attached to the complaint? Answer: Yes (by consent).

2. Did the plaintiff bring this action within less than sixty days from the date of the making of the award by the appraisers? Answer: Yes (by consent).

3. Did Jordan S. Thomas, adjuster, subsequent to said award and while acting as representative of defendant companies, by words, acts, or conduct, deny all liability under said award? Answer: Yes.

4. Did more than one year elapse after the date of the award made by the appraisers and the date that the plaintiff, F. S. Hassell, receiver of the Clark Millinery Company, was made a party to this action? Answer: Yes (by consent).

5. In what amount are the defendants indebted unto the plaintiffs by reason of the said fire and under the policies of insurance set forth in the complaint, and by virtue of the said

award? Answer: $3,461.73, with interest from 10 May, 1910, on stock, and (by consent) $178.08 damage to the furniture and fixtures, with interest from 10 May, 1910.

6. What was the value of the insured property saved from the fire? Answer: $257.

The plaintiffs allege, in the seventh section of their complaint, that the fire occurred on the first day of January, 1910, and "practically destroyed the entire stock" of the millinery company, and this allegation is admitted in the answer. There was no dispute as to the insurance and award, so far as they related to the furniture and fixtures, and that matter is eliminated from the case.

The policies contained the following clauses:

"1. The loss shall not be payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

"2. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured of all the foregoing requirements, nor unless commenced within twelve (12) months next after the fire."

There was a judgment upon the verdict, and the defendant appealed, after reserving certain exceptions, to be hereafter noted.

*Woodard & Hassell for plaintiff.*
*Connor & Connor for defendant.*

WALKER, J. The defendant resists recovery upon three grounds:

First. That the action was prematurely brought. It was found by the jury that the company, soon after the award was filed, denied its liability thereunder, through its adjuster, and the finding is fully supported by the evidence. The adjuster, after examining the award, refused to allow the arbitrators to rearrange the figures and place them in their proper columns, and in reply to a request that he permit this change to be made so that it might appear clearly what was intended, he said: "It

is no good. I demand another appraisal. We are not liable for one cent under that award. You cannot hold us for one cent." This language was a strong and unequivocal denial of all liability, and made inapplicable the stipulation for the six weeks extension of time for payment. That clause evidently refers to a proof of loss or an award, the validity of which and the correctness of the amount due thereunder are admitted. The agreement is that the company shall be allowed six weeks to pay, and not six weeks if it has refused to pay and denied liability. Why require plaintiff to wait six weeks to sue for a debt which is disputed, or, to put it in other wards, to wait six weeks for payment, when the defendant has emphatically said that it will not pay at the end of the time? It was intended to be merely an extension of credit upon an admitted debt. And so are the authorities. It will be observed that the provision for an allowance of six weeks indulgence is the same as to proof of loss and the award, and we have held in *Higson v. Insurance Co.,* 152 N. C., 206, that a denial of liability will dispense with proofs of loss; and to the same effect are the following cases: *Gerringer v. Insurance Co.,* 133 N. C., 407; *Jordan v. Insurance Co.,* 151 N. C., 340; *Parker v. Insurance Co.,* 143 N. C., 339; *Insurance Co. v. Edmundson,* 104 Va., 486; 19 Cyc., 857, sec. 2, and other authorities cited in *Higson v. Insurance Co., supra.* In *Insurance Co. v. Maackens,* 38 N. J. Law Rep., at p. 571, the same doctrine is stated, and supported by the citation of many cases: "A denial of all liability on the policy and peremptory refusal to pay under any circumstances is also a waiver of the right of the company to have the stipulated time before any suit is commenced. Upon such denial of liability and refusal to pay, an action may be commenced at once. *Trans. Co. v. Insurance Co.,* 6 Blatch. C. C. R., 241; *s. c.,* 34 Conn., 561; *Allgree v. Insurance Co.,* 6 Harr. and J., 408; *Phillips v. Insurance Co.,* 14 Mo., 220; *Insurance Co. v. Loney,* 20 Md., 20; *Insurance Co. v. Maguire,* 51 Ill., 342; *Cobb v. Insurance Co.,* 11 Kansas, 93." The Court, in *Insurance Co. v. Gracey,* 15 Col., 70, said that the clause was inserted to give the company an opportunity for making arrangements to pay the debt, and when liability is denied, since payment is in no event

to be made, preparation therefor becomes a matter of no importance whatever. It therefore held that the condition was waived by the denial. The simple way to put it is, that the clause has failed of its purpose. Time was allowed upon the assumption that the company would act in good faith and pay the claim, and not attempt to use the indulgence for the mere purpose of delay. What is said in *Insurance Co. v. Cary,* 83 Ill., 453, is still more to the point: "What reason can be assigned for extending to the company the benefit of the limitation clause in the policy as to the bringing of an action for a loss which its officers have decided, upon full examination, not to pay at any time nor under any circumstances? The time given in which to make payment of the loss was of no value to the company, for it did not intend to pay at all, and the assured was at liberty to bring her action at once." The same Court said, in *Insurance Co. v. Maguire,* 51 Ill., 342: "The fair understanding of this condition of the policy seems to us to be, that when the company agree to pay the loss, or are undecided what they will do, no suit can be brought until after the expiration of sixty days from the time proof of loss is furnished; but it cannot apply, nor would it be just that it should, to a case where a company peremptorily refused to pay, as was this case." The cases uniformly state that the object of this clause, inserted for the sole benefit of the insurer, is to allow time for investigation in the case of the requirement as to proof of loss and of preparation in the case of an adjustment. Proofs would be of no avail when there is a denial of liability, and it would be unreasonable to insist upon the extension of time to pay a claim, a mere favor, if it did not intend to pay it. "The denial of liability is inconsistent with such a claim and a waiver of it." *Insurance Co. v. Gibson,* 53 Ark., 494 (14 S. W. Rep., 672). The authorities sustaining this view are very numerous. Biddle on Insurance, sec. 1145; 4 Joyce on Insurance, sec. 3211; 19 Cyc., 903 (c) and note 57; 13 Am. and Eng. Enc. (2 Ed.), 374; 106 Tenn., 513; *Massell v. Insurance Co.,* 19 R. I., 565; *Assurance Co. v. Hanna,* 60 Neb., 29; *Insurance Co. v. Sylvester,* 25 Ind. App., 207; *Landis v. Insurance Co.,* 56 Mo., 591; *Insurance Co. v. Wickham,* 110 Geo., 129.

The suggestion that an adjusted claim under a policy is analogous to a promissory note, where a mere denial of liability would not affect the operation of the statute of limitations, is fully answered in *Insurance Co. v. Wickham, supra,* citing *Brewer, J.,* in *Cobb v. Insurance Co.,* 11 Kansas, 93. The nonwaiver agreement does not change the result. The denial of liability was something that occurred after the adjustment, and not during its progress. *Strause v. Insurance Co.,* 128 N. C., 64; *Dibbrell v. Insurance Co.,* 110 N. C., 193. Besides, in this case, the defendant ratifies the agent's denial of liability and still insists upon it. *Modlin v. Insurance Co.,* 151 N. C., 35. The very terms of the nonwaiver agreement confine its immunity and protection to things said and done while engaged in ascertaining and adjusting the loss, and not to anything said or done *ex post facto.* This exception, therefore, is overruled.

Second. But defendant says that if the action was not brought too soon, it was brought too late, as there is a clause requiring suit to be brought within twelve months next after the fire. The fire occurred in January, 1910, and this action was commenced by the millinery company on 4 May, 1910, but at the time the affairs of that company had been placed in the hands of Mr. F. S. Hassell, as receiver, who originally brought this suit in the name of the corporation, which he had a clear right to do. Pell's Revisal, secs. 1219, 1203, and 847 and notes. It is so held in *Smathers v. Bank,* 135 N. C., 410, and *Davis v. Manufacturing Co.,* 114 N. C., 321, in which *Justice Burwell,* approving what was decided in *Gray v. Lewis,* 94 N. C., 392, says: "As well because of the change in the system of our courts as because of the statutes, the receiver may sue either in his own name or that of the corporation. In whatever name he may elect to bring the action, it is essentially a suit by the corporation, prosecuted by order of the court, for the collection of the assets." And *Justice Connor* says, in *Smathers v. Bank, supra,* that "whatever may have been the law in respect to the right of the receiver to prosecute actions for the recovery of the assets of the corporation prior to the change in our judicial system, blending legal and equitable jurisdiction and remedies and power into one tribunal and providing for one form of

action, it is well settled that a receiver can now sue either way."
A receiver is only the officer of the court, its custodian, and the
title to the assets remains in the original owner. He is the arm
of the court to collect and administer the assets, and acquires
no beneficial interest in them. It is clear that he may use the
name of the insolvent corporation, or his own, or both, at his
election. High on Receivers, secs. 209 and 211. He did not
change the nature of the suit by becoming a party to it more
than one year after the fire. The action has not lost its iden-
tity. It is the same as it was in the beginning; he brought it
in the name of the insolvent company; and if this had not been
so, and the corporation had itself brought it, he adopted it as
his own by having himself made a party afterwards. But the
very point as to the limitation has been decided in *Coal Co. v.
R. R.,* 42 N. J. Eq., 591. In that case an action at law had
been brought, in due time, against the corporation, while in the
hands of a receiver, for damages arising from negligence of de-
fendant. Summons amended by substituting receiver as de-
fendant, who pleaded the statute of limitations. He was
enjoined by the court of equity from setting it up in the court
of law, upon the ground that it was the same action and record
in law, notwithstanding the amendment. The Court said: "If,
therefore, the proceedings were in this Court for this recovery,
and the proceedings had been amended as they have been in
the Supreme Court, this Court would say that the statute is no
bar, for it had not commenced to run at the time of the insti-
tution of the suit. Although the pleadings have been very mate-
rially amended by striking out the name of the only defendant
and inserting the name of another, *yet it is the same suit*—a
suit which was begun before the statute began to run. There
is sound reason for this, and, I think, excellent authority,"
citing cases. And this, we think, disposes of the second excep-
tion.

Third. The defendant attacks the award upon the ground
that its terms are conflicting, and, if not, then uncertain, and
it cannot, therefore, be enforced, and if enforcible at all, it is
only partially so, and to the extent of holding it good only as
an award for $1,166.91. The question is not by any means free

from difficulty, and may require us to consider carefully the
nature, in law, of an award under a submission by the parties.
Anciently, the construction of awards often turned on nice and
subtle distinctions, and much refinement will be found in the
books of that time on the subject; but a more liberal and sen-
sible method has been introduced, and the judges have invari-
ably laid it down that the courts will intend everything to ·
support awards, if possible, and will always give effect to them,
if it can be done consistently with law, and nothing will be
intended against them.  An award must be made strictly in
pursuance and in uniformity with the submission, which must
not, in its terms, be exceeded, and the arbitrators should regu-
larly award as to all things referred to them, though an award
may be good as to part and void as to the remainder if the parts
are separable, where the arbitrators have acted in excess of
authority.  Watson on Arbitration and Award, marg. p. 176
(59 Law Library, 111); *Stevens v. Brown,* 82 N. C., 460.  It
must be certain and final as to all matters submitted (*Gibbs v.
Berry,* 35 N. C., 388), and it will be taken to be so, unless the
contrary expressly appears on its face, the law indulging every
fair presumption in its favor, and not leaning to a construction
which would destroy it, but putting one consistent sense on all
the terms.  *Wood v. Griffith (Lord Eldon),* 1 Swanst., 43; *Bal-
lard v. Mitchell,* 53 N. C., 153.  Any ambiguity in the words
should be settled in the way which will best coincide with the
apparent intention of the arbitrators, and the court will, by in-
tendment, restrain the general terms in an award to apply to
particular words in the submission; so it will connect the par-
ticular thing awarded with the general words of the submission.
Watson, *supra.*  We have said the award must be certain, for
the object of the parties in submitting their disputes to arbitra-
tion is to make an end of litigation, and uncertainty in it would
only produce a fresh source of dispute between them.  The cer-
tainty required in an award is certainty to a common intent
(Watson, marg. p. 204; *Carter v. Sams,* 20 N. C., 182); not to
a certain intent in general or in every particular.  It is the cer-
tainty which is attained by giving to the words their ordinary
sense, but not excluding any other meaning derived from fair

argument or inference. Black's Dict., p. 186. *Lord Mansfield* said that awards are now considered with greater latitude and less strictness than they were formerly. And it is right that they should be literally construed, because they are made by judges of the parties' own choosing. And this is often (as it is here) in cases of small consequence, where the play is not worth the candle. Indeed, they must have these two properties, to be certain and final. But the certainty may be judged of according to a common intent, and consistent with fair and probable presumption. *Hawkins v. Colclonch,* 1 Burr., 274-277. While certainty is an essential of a good award and one of its chief characteristics, it is not necessary that it should be written with such technical and critical nicety that subtle examinations and forced constructions cannot discover a doubt, or a difficulty, or a double meaning, in any part of it. Reasonable certainty of meaning is sufficient, for it will be construed in a fair and liberal spirit and favorably, with a view to support it as far as a sensible interpretation will allow. *Borretts v. Patterson,* 1 N. C., 27; *Stevens v. Brown,* 82 N. C., 460. If it be expressed in such language that plain men, acquainted with the subject-matter, can understand it, that is enough, no matter how short and elliptical it is. The degree of uncertainty, to avoid an award, should be such as would avoid any other contract; such as would leave the meaning of the arbitrators wholly in doubt. Morse on Arbitration and Award, pp. 408-409, and cases cited in notes; *Osborne v. Calvert,* 83 N. C., 366. The award generally speaks for itself, and cannot be altered any more than the verdict of a jury. It is not open to proof of any understanding or meaning of the arbitrators, different from that it carries with it and warranted by its terms. *Scott v. Green,* 89 N. C., 278. Arbitrators need not go into particulars or assign reasons, and their duty is best discharged by a simple announcement of their decision, or the result of their investigation. *Patton v. Baird,* 42 N. C., 255. They are not bound to decide according to law, when acting within the scope of their authority, being the chosen judges of the parties and a law unto themselves, but may award according to their notions of justice and without assigning any reason. *Jones v. Frazier,*

8 N. C., 379; *Leach v. Harris,* 69 N. C., 532; *Robbins v. Kille-brew,* 95 N. C., 19; *Ezzell v. Lumber Co.,* 130 N. C., 205. They may decide upon principles of equity and good conscience, and make their award *ex æquo et bono.* 3 Story Eq. Jur., sec. 1454; *Johnson v. Nobor,* 38 Me., 487. The policy of the law favors settlements by arbitration and, therefore, leans liberally and partially towards them, extending its favor in support of this amicable method of settlement. *Robbins v. Killebrew, supra.* Parol evidence is competent in order to show what matters the arbitrators acted on. *Brown v. Brown,* 49 N. C., 123; *Walker v. Walker,* 60 N. C., 259; *Osborne v. Calvert, supra.*

With these well-settled principles kept in mind, we must determine whether this award is invalid for uncertainty or inconsistency, or whether we can adopt the view of defendant, that, if valid, the arbitrators have awarded only $1,166.91 to be paid to plaintiff. As to the last position, we think that it is utterly inadmissible, as the arbitrators have, in so many words, awarded the sum of $4,872.62 and the damaged stock to the plaintiff, and we cannot, therefore, decide that $1,166.91 is the amount due. If these two findings are in hopeless conflict, the award is void for uncertainty. Unfortunately, the arbitrators have been a little obscure in the form of stating their conclusion. We have no doubt that they performed their duty intelligently and knew exactly what they intended to decide, but were misled by a lack of familiarity with insurance methods and terms, and by not knowing in which column of defendant's form or blank to place the figures. The evidence discloses this fact. They have unwittingly run into a mere inaccuracy of expression, and that is all. Where the intention is clear or free from reasonable doubt, we should not try to test an award by the strict rules of grammar, arithmetic, or bookkeeping, but look at the instrument with favor, and take a common-sense view of it, allowing for the deficiencies of the layman or those not skilled in legal forms or methods. We may examine the submission, in connection with the award, in order to explain or construe the latter, for they naturally and legally go together. The arbitrators were directed by it to ascertain the sound value of the stock in the first instance, and unless we adopt the amount, $4,872.62, as this value,

there is nothing in the award to stand for it. We have seen that parol evidence may be heard to show what the arbitrators did, that is, what they acted upon, and that they kept within the terms of the submission. This they say was done by following its instructions and deducting the necessary items from the cost price, to get the actual "sound value" on the day of the fire and just before it occurred. *Brown v. Brown, supra.* The amount, $4,872.62, is put in the column headed "Sound Value," and it is very evident that it was arrived at by deducting $1,166.91 from it, and the latter figures were manifestly placed in the wrong column. This is made more apparent when we consider that the arbitrators actually awarded $4,872.62 as the loss on the stock, or the amount due under the policies. But the award sheds still more light upon itself, so that we can readily and safely read its meaning. It must be remembered that the statement preceding the actual award was an "appraisal and determinator" of values—merely a statement of the process by which they came to their conclusion. The pith of the award—the final adjudication of the arbitrators—is contained in the words, "Total amount of award, $4,872.62 and the damaged stock." This clearly implies, to the exclusion of any reasonable doubt, that they regarded the loss as total, and included the débris with the pecuniary award, because they decided it was worth nothing.

Excluding from our consideration all oral testimony admitted by the court as to what the arbitrators meant and as to how they awarded, we can call to our aid a very significant admission of the defendant in the pleadings, to confirm our construction of the award. Plaintiff alleged that the fire practically destroyed the entire stock, and this is admitted in the answer. If this be so, how could the amount of the loss be $1,160.91, only one-fourth of the sound value of the goods? The defendant admitted, and the arbitrators found, a total loss, and for that reason added to their award of money, $4,872.62, "the damaged stock." The giving of the stock to plaintiff is entirely inconsistent with the claim of defendant, that the arbitrators intended to award only $1,166.91, or any other amount than the one they did give, to wit, $4,872.62, which was the sound

value of the stock,. the loss being practically total, as they and the parties thought, and the .débris or damaged goods being worth nothing, as the arbitrators evidently decided. The arbitrators could not have made the award without having decided that the loss was total and the débris of no value, because the insured could not fairly and equitably be entitled to the débris upon any other theory. This is not only a "fair and reasonable presumption," but a clear implication from the terms of the award and its context, and such a presumption and implication may be summoned to the aid of an instrument, which, without some such assistance, would have to be condemned as too uncertain (Watson on Arb., pp. 411 and 414), and for that reason incapable of enforcement. It is true that the jury have found that the damaged goods were worth $257, which was deducted by the court from the amount found due by the arbitrators; but while we think this ruling was erroneous, as changing the award, it was in favor of defendant, who cannot, therefore, complain; and the plaintiff not having appealed, it must stand.

We have considered the case without reference to the extrinsic evidence, showing what was the intention of the arbitrators. We have said it is not competent to change the award in any way that will change its meaning, as that appears upon its face, in the absence of proper allegations and proof of fraud or mistake. We must accept it as we find it. *Scott v. Green,* 1 Enc. of Law and Ev., p. 964.

There is no error in the case.