# . C. H. MOAK v. CONTINENTAL CASUALTY COMPANY.

## Middle Section.    March 5, 1927.

### No petition for Certiorari was filed.

1. **Insurance.  Where insurance contract is executed and the disability occurs in another state the contract is governed by the laws of the state.**
   In an action to recover on an insurance policy which was issued in the state of New York and the evidence also showed that the disability arose in the state of New York, held that the liability of the company was governed by the laws of New York.

2. **Insurance.  Agent.  Agent making out application is agent of the company and not the insured.**
   Where the insured dictates the answer to the questions in the application to the agent of the company who fills out the blanks the agent, held to act for the company and not for the insured.

3. **Insurance.  Insurance company responsible for mistakes of its agent.**
   Where the insured correctly states the facts to the agent soliciting and procuring the insurance, and the agent incorrectly fills out the application which is innocently signed by the insured without knowledge of the incorrect statement, then the insurance company is estopped to avoid the policy on account of the incorrect statements made in the application.

4. **Insurance.  For purposes of insurance a person is considered as being of the age nearest his birthday.**
   It has been the universal custom of insurance companies to regard and treat an insured or an applicant for insurance as being of that age nearest his birthday, that is, a person of a given age, say 60 years, is regarded as 60 years old until he reaches the age of 60 years and 6 months.

5. **Contracts.  The law of the place where the contract is made becomes a part of the contract.**
   The lex loci contractus becomes as much a part of the contract as if specifically incorporated therein, and, in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement.

6. **Principal and agent.  Agent's authority is determined by the law of the place at which the agency had its origin.**
   The relation of principal and agent is governed by the law of the place in which it has its origin, and it is by this law that the extent of the agent's authority is determined.  Any acts performed by the agent in behalf of his principal in another state, where the contract is made, must be tested out by the law of the state in which the relation had its inception, and if they were beyond his powers there, they are beyond it everywhere and do not bind the principal, but if they are within his power there, they are also within his power everywhere and the principal is bound.

7. **Conflict of laws.  The law regulating the remedy, procedure and evidence is governed by the law of the forum.**
   The law regulating the remedy, procedure, evidence, whether the determination of a particular matter, is for the court or the jury, and the order and manner of the trial are governed by the laws of the forum.

8. **Conflict of laws.** If the enforcement of a contract is against the public policy of the forum it will not be enforced.

A contract will not be enforced where its enforcement is against the public·policy of the forum, even though the contract may be valid in both the place where it is made and the place where it is to be performed. The public policy of a state, established either by express legislative enactment or by decision of ,its court, is supreme, and will not be relaxed even on the ground of comity to enforce contract.

9. **Insurance.** In Tennessee agent who solicits insurance is the agent of the company.

Both by statute (chapter 442 of Acts of 1907) and the decisions of the courts it is the rule in Tennessee that a person who solicits the application for insurance is the agent of the company and not of the insured.

10. **Evidence.** Statutes of another state presumed to be that of the forum.

Where the law of another state ,is not proven in the lower court, the court must assume that the law of the other state is the same as the law of the forum.

11. **Insurance. Evidence.** Evidence held to show insurance company liable on its policy.

In an action to recover on an insurance policy where the·defense was that the insured had misrepresented his age, but the evidence showed that the agent, in making out the application had made the mistake, held that the ,company was responsible for the mistakes of its agent and the insured could recover.

Appeal from Chancery Court, Maury County; Hon. Thomas B. Lytle, Chancellor.

Affirmed.

Peebles & Forgey, of Nashville, for appellant, Casualty Co.

Pitts, McConnico & Hatcher, of Nashville, for appellee, C. H. Moak.

CROWNOVER, J.   This was a suit to recover sick benefits accruing to the assured under a disability policy issued by the defendant Insurance Company to the complainant.

The bill alleged that the defendant Insurance Company on January 16, 1920 issued to complainant a disability policy of insurance providing indemnity for certain losses caused by accidental means, and also for loss of time by sickness mentioned in the policy and which included permanent paralysis, at the rate of $25 per week for 104 weeks.

The bill further alleged that the original policy issued on January 16, 1920 for the period of one year, was renewed in December, 1920 for another year beginning January 16, ·1921, and that on May 21, 1921 complainant was stricken with permanent paralysis resulting from causes or diseases against which he was insured by the terms of the policy, independently of other causes, from which complainant lost the use of one hand and one foot, and was otherwise seriously and permanently paralyzed, and was thus

rendered permanently unable to engage in any labor or occupation; that the Insurance Company was promptly notified and all proofs of loss were promptly furnished, and all things done that were required by the policy in order to fix liability; that a demand was made on the Company for payment but was arbitrarily refused and all liability denied.

The defendant answered and denied liability because the complainant was over 60 years of age and had misrepresented his age in the application in that he stated that he was 57 years of age when he was 59 years of age. It pleaded that the policy did not cover any one under 18 years of age or over 60 years of age, and that the application provided that if one or more of the statements made therein were intentionally false, or if the false statements materially affected the acceptance of the risk or the hazard assumed by the Company, then the policy was void. It further pleaded that the contract was entered into and the disability arose in the State of New York and was governed by the laws of that state.

The testimony of the complainant and his wife was taken and the defendant introduced no evidence. But the parties filed an agreement in which it was stipulated, (1) that all notices and proof of loss were furnished or waived by the Company; (2) that by the universal custom of insurance companies the assured's age is treated as that nearest his birthday; (3) that the policy was issued and delivered in the State of New York and that complainant suffered the stroke of paralysis from which the disability arose in that State; (4) that this was a New York contract of insurance and that the policy is in accordance with the New York Standard Provision Law, section 107 of chapter 28 of the Acts of 1909 of the Consolidated Laws of New York as shown by Parker's New York Insurance Law, which book may be read and used as evidence in this suit without further proof.

At the hearing the Chancellor held that the complainant was born on May 6, 1861, and was therefore not over the age of 60 years when he suffered the stroke of paralysis on May 21, 1921, from which the disability arose. He further held that the soliciting agent filled out the application, and that the assured gave his correct age to the agent who incorrectly inserted his age in the application as 57 years, and that the soliciting agent was the agent of the Insurance Company and not the agent of the insured, therefore the Insurance Company was estopped to set up the acts of its own agent to avoid the policy. He therefore rendered a decree against the Company for $2600, and interest thereon in the sum of $468, making a total of $3068.

The defendant appealed and has assigned errors, the substance of which is that the Chancellor erred in rendering a decree and in finding that complainant was born on May 6, 1861, and did not misrepresent his age to the soliciting agent; that the Chancellor should have found that the policy was a New York contract and that the complainant was over 60 years of age, for insurance purposes, on the date of the renewal of the policy and at the time he was stricken with paralysis, and that complainant had with intent to deceive misrepresented his age in his statement made in the application, which statement was a condition precedent to the issuance of the policy and materially affected the acceptance of the risk and the hazard assumed by the Company, it being insisted that the insurance solicitor who filled out the complainant's application was the agent of the assured and not the agent of the Company.

The facts as we find them, necessary to be stated, are that the complainant made a written application for the policy on January 16, 1920, which application was typewritten by the soliciting agent and signed by the complainant. The assured stated the answers to the questions to the soliciting agent who wrote them on the typewriter. There were several printed statements in the application, one of which is as follows:

"I have made the foregoing statements as representations to induce the issue of the policy for which I have made application and to that end I agree that if any one or more of them be false all right to recover under said policy shall be forfeited to the Company if such false statement was made with actual intent to deceive or if it materially affects either the acceptance of the risk or the hazard assumed by the company."

There was also another provision which is as follows:

"I understand that the agents and solicitors of this Company are not authorized to extend credits, or waive, extend or change any of the terms, conditions or provisions printed herein, and I agree that this proposed insurance shall not take effect until after this application has been accepted by the Company and the policy issued."

The application was sent in to the Company and on the same day a disability policy of insurance was issued by the defendant Company, providing indemnity for certain losses caused by accidental means, and also for loss of time by sickness mentioned in the policy, which included permanent paralysis, at the rate of $25 per week during disability, but not extending beyond 104 weeks. The policy contained a provision that the policy should not cover any person under the age of 18 years or over the age of 60 years, and the policy should remain in force for the period of one year.

On December 8, 1920 the policy was renewed for another year beginning on January 16, 1921 for which the complainant paid $60.30 premium, and on May 21, 1921 complainant was stricken with permanent paralysis and lost the use of one hand and one foot, and was rendered permanently unable to engage in any labor or occupation, of which the Insurance Company had notice and was furnished with proof of loss. The policy was issued and the disability arose in the State of New York, and liability is governed by the laws of that State, as the policy is a New York contract of insurance, it having been agreed by both parties that this was a New York contract of insurance, and should be governed by the insurance laws of New York as shown by Parker's Insurance Laws. It was agreed that that book might be read and used in evidence without further proof, but there is nothing in the record to show that the book was actually introduced and read in evidence to the court below; hence there is no proof in the record as to the laws of New York governing this case.

We also hold that the assured was born on May 6, 1861 and gave his correct age to the soliciting agent who wrote it incorrectly in the application as 57 years, which fact was not drawn to the assured's attention at the time he signed the application, we therefore hold that the insured did not intentionally misrepresent his age in his application, and the soliciting agent was the agent of the Insurance Company and not the agent of the assured in filling out the application. Where the insured correctly states the facts to the agent soliciting and procuring the insurance, and the agent incorrectly fills out the application, which is innocently signed by the insured without knowledge of the incorrect statement, then the insurance company is estopped to avoid the policy on account of the incorrect statements made in the application. See Insurance Co. v. Hancock, 106 Tenn., 513, 62 S. W., 145; Insurance Co. v. Whitaker, 112 Tenn., 151, 79 S. W., 119; Hale v. Woodmen of the World, 143 Tenn., 555, 226 S. W., 1045; Reilly v. Empire Life Insurance Co., 90 N. Y. Supp., 866; Carmichael v. John Hancock Life Insurance Co., 9 N. Y. Supp., 1033.

This is especially true where there is no agreement that the solicitor was the agent of the insured. See Williams v. Mutual Life Insurance Co., 96 N. Y. Supp., 823.

Hence we think there is nothing in the assignment that the soliciting agent was the agent of the insured. It follows that if the soliciting agent was the agent of the Insurance Company, the Insurance Company is estopped to take advantage of a mistake made by its own agent, and the Company will not be permitted to insist that the statement materially affected the acceptance of the risk or the hazard assumed by the Company.

The next question raised by the Insurance Company is that the applicant was over 60 years of age when he was stricken with paralysis and therefore the policy did not apply to him under the provision hereinabove stated. We think there is nothing in this proposition, as it was agreed that it has been the universal custom of insurance companies to regard and treat an insured or an application for insurance as being of that age nearest his birthday, that is, a person of a given age, say 60 years, is regarded as 60 years old until he reaches the age of 60 years and 6 months; therefore, he was not over 60 years of age until the 6 months after his 60th birthday had expired. See Todd v. American Mutual Insurance Union, 275 S. W., 60 (Mo.).

It it insisted that the statement as to the assured's age made in his application was a condition precedent to the issuance of the policy and materially affected the acceptance of the risk and the hazard assumed by the Company, and that the same should be governed by the laws of the State of New York.

It is almost a universal rule that the contract of insurance must be governed by the laws of the State where such contract is finally consummated. The lex loci contractus becomes as much a part of the contract as if specifically incorporated therein, and, in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement. See 5 R. C. L., 972, sec. 54. Hence the relation of principal and agent is governed by the law of the place in which it has its origin, and it is by this law that the extent of the agent's authority is determined. Any acts performed by the agent in behalf of his principal in another State, where the contract is made, must be tested out by the laws of the State in which the relation had its inception, and if they were beyond his powers there, they are beyond it everywhere and do not bind the principal, but if they are within his power there, they are also within his powers everywhere, and the principal is bound. See 5 R. C. L., 924. But the law regulating the remedy, procedure, evidence, whether the determination of a particular matter is for the court or the jury, and the order and manner of the trial, are governed by the law of the forum. See 5 R. C. L., 1042-1046; 3 Michie's Tenn. Ency. Dig., 354, 386. However, a contract may be valid by the laws of both the place where it is made and the place where it is to be performed, and yet fail because the lex fori, on grounds of public policy, will not permit its enforcement. This may apply to the enforcement of the contract or to the defenses set up. The public policy of a State, established either by express legislative enactment, or by the decisions of its courts, is supreme, and when once established will not, as a rule, be relaxed even on the ground

of comity to enforce contracts, which, though valid where made, contravene such policy. See 5 R. C. L., 944-948; Bank of Geneva v. Shaw, 109 Tenn., 237, 70 S. W., 807; 3 Michie's Tenn. Ency. Dig., 354. The policy of this State has been established both by statute (chapter 442 of Acts 1907) and the decisions of our courts that the person who solicited the application is the agent of the Company and not of the assured. See Maryland Casualty Co. v. McTyer, 150 Tenn., 690; Amanda Holmes v. Metropolitan Insurance Co., 3 Tenn. App. Rep., 80; Shannon's New Code, sec. 3275a2.

But as above stated the insurance law of New York was not read into the record, hence we cannot look to the insurance laws of New York. Where the law of another State is not proven in the lower court we must assume that the law of the other State is the same as the law of this State. See Smithson's Civil Procedure, 422 and authorities cited. Hence, under the law of this State, above cited, there is nothing in this contention as the soliciting agent is the agent of the Company, and the Company is estopped to set up the mistakes of its own agent to avoid the policy. However, after an examination of the decisions of New York we find that the New York decisions are in accord with ours. The New York cases above cited are very much in point, and settle the proposition.

It results that all the assignments of error must be overruled, and the decree of the Chancellor affirmed. A decree will be entered in this court in favor of the complainant Moak and against the appellant Insurance Company and the surety on its appeal bond for the sum of $2600 and interest thereon from May 21, 1923, together with the cost of the cause including cost of appeal, for all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.